**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LAWANDA TUCKER,                     )  **No. SACV 12-296-SS**
                                    )
                Plaintiff,          )
                                    )
        v.                          )
                                    )  **MEMORANDUM DECISION AND ORDER**
MICHAEL J. ASTRUE,                  )
Commissioner of the Social          )
Security Administration,            )
                                    )
                Defendant.          )
_____   )

**I.**

**INTRODUCTION**

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Disability Insurance benefits. Plaintiff lodged her complaint with this Court on February 24, 2012. On April 13, 2012, pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of the undersigned United States Magistrate Judge. Defendant filed its Answer on July 19, 2012. On August 20, 2012, Plaintiff filed a memorandum in support of her complaint ("Complaint Memo"). Defendant filed a Memorandum in Support

of its Answer on September 14, 2012.  On October 1, 2012, Plaintiff filed a Reply.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

On March 24, 2009, Plaintiff filed an application for Disability Insurance Benefits ("DIB") claiming that she could not work due to severe, disabling adjustment disorder with depression, anxiety, and high blood pressure.  (Administrative Record ("AR") 166-173).  The claim was denied by the Agency on July 9, 2009 and again upon reconsideration on September 11, 2009.  (AR 93-94).  Plaintiff then requested a hearing, which was held before an administrative law judge ("ALJ") on December 15, 2010.  (AR 71-92).  Plaintiff appeared with counsel and testified.

A vocational expert also testified.  On February 24, 2012, the ALJ issued a decision denying Plaintiff benefits.  (AR 27).  Plaintiff sought review of the ALJ's decision before the Appeals Council.  (AR 14).  On December 30, 2011, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1-6).  Plaintiff filed the instant Complaint on February 24, 2012.

\\

\\

\\

2

### III.

### FACTUAL BACKGROUND

Plaintiff was born on October 9, 1964 and was forty-six years old at the time of the hearing. (AR 174). She graduated from high school, has an AA degree in psychology, and has past work experience as a prison correctional officer and credit clerk. (AR 200, 373). Plaintiff asserts that she has Post Traumatic Stress Disorder (PTSD), depression, anxiety, and high blood pressure. (AR 167). Plaintiff's PTSD, depression, and anxiety began after she suffered a sexual assault in 1996. (AR 373). Based on a claim of depression, Plaintiff was approved for state disability retirement benefits on October 9, 1997 and elected to receive $1,546.18 in monthly benefits. (AR 135-37).

Plaintiff returned to work in 2002 and apparently maintained steady employment for five years, i.e., until 2007. (AR 154, 178). However, Plaintiff also received retirement benefits as late as February 1, 2009. (AR 145). Plaintiff ceased working on March 1, 2007, claiming that her disability prevented her from maintaining employment. (AR 167).

According to Plaintiff's medical records, she sought treatment primarily from Dr. Rosen. (AR 396-474). At various points between 2007 and the filing of Plaintiff's DIB claim, Dr. Rosen examined Plaintiff for conditions including shingles, possible infertility, chest pain, dyspnea, wheezing, headaches, dizziness, and problems balancing. (AR 452, 455, 461, 466-67). Dr. Rosen's reports indicate that Plaintiff's symptoms where not consistently present during that

3

period.  At times, Plaintiff exhibited symptoms of depression, anxiety, and high irritability.  (AR  453, 456, 458).  However, during other examinations, she exhibited neither depression nor anxiety.  (AR 450).  On July 27, 2009, at Plaintiff's request, Dr. Rosen reduced the dosage of Plaintiff's anxiety medication.  (AR 332).  Dr. Rosen noted that Plaintiff had "[n]o psychological symptoms" and "no emotional liability."  (AR 447).  Further, on November 23, 2009, Plaintiff discontinued the medication.  (AR 445).  There is no record of treatment with Dr. Rosen beyond this point.

    Because Plaintiff was not receiving psychotherapy for her mental health complaints when she applied for DIB, the Agency referred her to Dr. Rajadhyasksha ("examining physician") for psychiatric evaluation. (AR 23).  On June 23, 2009, Dr. Rajadhyasksha diagnosed Plaintiff with "PTSD, severe, (and) depressive disorder . . . ."  (AR 373-75).  Dr. Rajadhyasksha reported that Plaintiff has never been to a psychiatrist. (Id.).  Dr. Rajadhyasksha also reported that Plaintiff presented as "alert, cooperative, oriented to person, place and time."  (374). Further, Plaintiff "had spontaneous speech [that was] coherent and relevant" but also presented with a "[m]ood [that was] very depressed, anxious with tearful affect."  (Id.).  Dr. Rajadhyasksha noted that "[h]er concentration was adequate" and that she was able to "stay focused and was not easily distracted." (Id.).  Plaintiff also denied "current active suicidal or homicidal ideations." (Id.).  She appeared to be of "average" intelligence, evidenced "[good] general knowledge," and appeared to "keep up with current events in the United States." (Id.).  She was also "able to do serial sevens and simple calculations with some difficulty."  Her memory was "fair as tested by recall of 3

4

items after 5 minutes," "intact for remote events," and "fair for recent events." (Id.). Dr. Rajadhyasksha nevertheless concluded that, at the time of the June 23, 2009 examination, Plaintiff "will have difficulty getting along with her coworkers, dealing with supervisors and maintaining a schedule . . . ." (AR 375). However, on July 27, 2009, treating physician Dr. Rosen observed that Plaintiff showed no psychological symptoms, emotional liability, or sleep disturbances. Dr. Rosen also reported that Plaintiff's other conditions, including shingles, wheezing, nausea, osteoarthritis of the knee, and thoracic spine were "resolved." (AR 446-51).

Finally, Dr. Balson ("non-examining physician") prepared a case analysis on July 7, 2009. Dr. Balson concluded that Plaintiff's medical records show that she has "no problems with personal care," although she has "some difficulty sleeping" and "does not handle stress well." (AR 388). However, Dr. Balson also concluded that Plaintiff does not need reminders to take medication, completes household chores without encouragement, goes out alone, drives, and has good relations with family and friends. (AR 388). These findings are consistent with the third party function report completed by Plaintiff's husband. (AR 194-99). In that report, Plaintiff's husband added that she is able to pay bills, count change, handle a savings account, and use a checkbook. (AR 195).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a

---

[1]      Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

list of specific impairments described in 20 C.F.R.
Part 404, Subpart P, Appendix 1?  If so, the claimant
is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past work?
If so, the claimant is found not disabled.  If not,
proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the
claimant is found disabled.  If so, the claimant is
found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§
404.1520(b) - 404.1520(f)(1) & 416.920(b) - 416.920(f)(1).

The claimant has the burden of proof at steps one through four,
and the Commissioner has the burden of proof at step five. Bustamante,
262 F.3d at 953-54 (citing Tackett).  If, at step four, the claimant
meets his burden of establishing an inability to perform past work, the
Commissioner must show that the claimant can perform some other work
that exists in "significant numbers" in the national economy, taking
into account the claimant's residual functional capacity,[2] age,
education, and work experience.  Tackett, 180 F.3d at 1098, 1100;
Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).
The Commissioner may do so by the testimony of a vocational expert or
by reference to the Medical-Vocational Guidelines appearing in 20

---

[2]  Residual functional capacity is "what [one] can still do
despite [his] limitations" and represents an "assessment based upon all
of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

7

C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process discussed above.  At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2007.  (AR 22).  At the second step, the ALJ found that Plaintiff has medically determinable severe impairments of PTSD, depression, and anxiety that have significantly limited Plaintiff's ability to perform basic work functions within the meaning of 20 C.F.R. § 404.1521.  (AR 19).

At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments appearing in the "Listing of Impairments" set forth in 20 C.F.R. § 404, Subpart P, Appendix 1.  (AR 23).  The ALJ noted that this finding is "[c]onsistent with a lack of marked medical signs or . . . findings representing [twelve continuous months of disability] . . . ." (Id.).

8

Before proceeding to the fourth step, the ALJ considered Plaintiff's RFC. In doing so, the ALJ considered all symptoms and the extent to which the symptoms can be reasonably accepted as consistent with the record. (AR 24). Plaintiff alleged that she cannot work, has "severe ongoing symptoms of PTSD . . . that force her to 'go to a dark place' until she feels like she's 'in a black hole.'" (AR 25). Yet, as the ALJ observed, Plaintiff has maintained a relatively normal personal life, as evidenced by her fourteen-year marriage and her pregnancy in 2010. (Id.). The ALJ also noted that while Plaintiff describes her daily activities as only "watching TV, eating, and sleeping," the third-party function report submitted by her husband evidences that she is able to prepare her own meals and only has difficulty with large meals. (Id.) (citing AR 192-99). The ALJ further noted that Plaintiff acknowledged she is capable of "clean[ing] her bathroom, mak[ing] her bed, [and] go[ing] outside about 3-4 times a week unaccompanied." (Id.). Additionally, Plaintiff drives a car, shops for groceries, pays bills, and speaks with her mother and sister on the phone every other day. (Id.). She can walk three miles at a time, do the laundry, and attend church services regularly. (Id.). The ALJ concluded that Plaintiff retained a residual functional capacity ("RFC") that would allow her to perform "simple routine and repetitive work tasks in a low-stress work environment-that is, one with no more than occasional changes in the work setting or decision-making required." (AR 24). The ALJ also found that Plaintiff "can be around employees throughout the workday but should not need more often than occasionally [to] have conversations with them or perform interpersonal interactions." (Id.).

At step four, after addressing Plaintiff's functional limitations, the ALJ determined that Plaintiff "would be unable to return to her past relevant work . . . ." (AR 26). However, at step five, based on Plaintiff's RFC and on the testimony of the vocational expert, the ALJ found that Plaintiff could perform "simple or unskilled work with minor social interaction adjustment" for twelve continuous months. (AR 24). Specifically, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy, such as that performed by hospital cleaners or warehouse workers. (AR 27). Thus, the ALJ denied Plaintiff's claim. (Id.).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To

10

determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

### DISCUSSION

Plaintiff contends the ALJ erred for two reasons.  She first claims that the ALJ failed to adequately consider and fairly interpret the opinions of the treating and examining physicians. (Complaint Memo at 5-9).  Specifically, Plaintiff alleges that the ALJ selectively cited the medical record and based his conclusions on instances where Plaintiff's symptoms were controlled during the relevant time period rather than those where Plaintiff's symptoms were present. (Id. at 7). Plaintiff appears to contend that even though her symptoms were not always present or severe during the relevant time period, her underlying conditions were consistently present.  (See id. at 8). Plaintiff also alleges that the ALJ improperly (I) ignored the examining physician's finding that Plaintiff "'will have difficulty getting along with her coworkers, dealing with supervisors and maintaining a schedule at this time,'" (id. at 8) (quoting AR 375),

1   and (ii) presented the vocational expert with a hypothetical that
2   failed to account for such limitations. (<u>Id.</u> at 8-9).

3

4       Second, Plaintiff contends that the ALJ incorporated an incorrect
5   legal standard into the hypothetical presented to the vocational
6   expert. The ALJ asked the vocational expert to exclude from the list
7   of jobs Plaintiff could perform any "job where an essential function
8   of the job description would include interacting with the public."
9   (<u>See</u> Complaint Memo at 11-12; <u>see also</u> AR 8). According to Plaintiff,
10  the ALJ's hypothetical erroneously used the concept of "essential job
11  function" instead of the correct standard of "bona fide occupational
12  qualifications." (Complaint Memo at 10). Specifically, Plaintiff
13  alleges that because the term "essential function" does not include
14  non-core job functions "reasonably necessary" for employment in a
15  particular position, the ALJ's hypothetical was overinclusive of the
16  jobs Plaintiff is able to perform. (<u>Id.</u>). Plaintiff contends that if
17  the vocational expert had been asked to identify jobs where interaction
18  with the public is not a "reasonably necessary" part of the job
19  description, there would be no jobs that someone with her RFC could
20  perform. (Complaint Memo at 10-12).

21

22      **A.**    **The ALJ Provided Clear And Convincing Justification For His**
23              **Weighing Of The Medical Record**

24

25      Plaintiff filed for DIB claiming that she could not work due to
26  severe, disabling adjustment disorder with depression, anxiety, and
27  high blood pressure. (AR 166-173). However, the ALJ found that
28  Plaintiff did not have a disability that prevented her from engaging

in "simple or unskilled work with minor social interaction adjustment" for a period of twelve continuous months.  (AR 24).

When an ALJ evaluates medical evidence, the opinions of treating physicians are entitled to special weight because the treating physician is uniquely situated to know and observe the claimant as an individual.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). In contrast, the opinions of examining physicians who have been retained by the Agency, though still important, are given less weight. The ALJ may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)).  Reports from an examining physician, if supported by clinical tests and observations upon examination, constitute substantial medical evidence and may be relied upon by the ALJ in order to determine the claimant's RFC.  Andrews, 53 F.3d at 1041.  Where such reports differ from those of the treating physician, the opinion of the examining consultive physician may itself be substantial evidence; however, "[i]t is then solely the province of the ALJ to resolve the conflict." Id.

Here, Plaintiff first contends that her medical records contradict the ALJ's findings.  (Complaint Memo at 5-9).  Specifically, she alleges that the ALJ selectively cited her treating physician's reports and gave improper weight to the examining physician's June 23, 2009 evaluation.  (Id. at 7).  She argues that the ALJ should not have heavily relied on the examining physician's opinion because the

13

examining physician saw Plaintiff just one time, while the treating physician saw Plaintiff multiple times, including on two occasions sandwiching the examining physician's examination. (Complaint Memo at 7-8). In sum, Plaintiff contends that the ALJ selectively reviewed her medical records and based his conclusions on instances where Plaintiff's symptoms were controlled during the relevant time period rather than those where her symptoms were present.

The treating physician's reports support the ALJ's findings. Specifically, they do not evidence a disability spanning twelve continuous months. Instead, the reports affirmatively establish that Plaintiff's psychological symptoms were not present for twelve continuous months. As the ALJ accurately noted, while Plaintiff's treating physician found that Plaintiff exhibited symptoms of depression, anxiety, and high irritability at various points between 2007 and the filing of Plaintiff's DIB claim, the same physician reported that her symptoms were not consistently present during that period. (See AR 22-25; see also AR 450, 453, 456, 458). The following reports further support the ALJ's findings. On June 7, 2007, roughly four months after Plaintiff's alleged disability onset date, Plaintiff's treating physician reported that her "mental status exam was normal" and that she exhibited "[n]o anxiety, no depression, and no sleep disturbances." (AR 467). At that time, Plaintiff's treating physician also reported that Plaintiff was "[n]ot under stress." (Id.). On November 25, 2008, the treating physician reported that Plaintiff exhibited anxiety following wildfires that occurred the prior

week, but he did not list any other psychological symptoms.  (AR 456).[3]
As the ALJ noted, the treating physician also reported as resolved
several previous conditions, including  shingles and wheezing.  (See
AR 23; see also AR 456-57).


    On July 17, 2009, Plaintiff saw the treating physician for the
following reasons: "Cough . . . irregular periods. . .nausea . . .
wants to see infertility specialist."  (AR 452).   The treating
physician reported Plaintiff as having a anxiety disorder, but no
depression. (AR 452-54). He reported Plaintiff as "[n]ot depressed."
(AR 453). On July 27, 2009, the treating physician reported that
Plaintiff exhibited "[n]o pyschological symptoms" and "no emotional
liability."  (AR 447).  On November 23, 2009, he reported that
Plaintiff again exhibited signs of depression, anxiety, and dysthymia.
(AR 44).


    Plaintiff has failed to meet her burden of establishing disability
for a continuous period of not less than twelve months.  Webb v.
Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing Tackett, 180 F.3d
at 1098)).   The ALJ provided clear and convincing reasons why the
treating physician's reports do not evidence that Plaintiff's relevant
symptoms were present for the requisite period.   The reports instead
show that her symptoms were only sporadically present from the time she
filed for DIB to the time of the ALJ's decision.   Accordingly,
Plaintiff's claim fails to the extent Plaintiff alleges the ALJ's

---

    [3]  The Court notes that while depression was not listed on the
November 25 report, Plaintiff's treating physician discussed depression
and anxiety with Plaintiff at that time.  (AR 457).

decision was against the weight of the evidence because the treating physician's reports evidence a qualifying disability.

Second, Plaintiff argues that the ALJ's decision was contrary to the consultative physician's findings and that those findings were improperly excluded from the hypothetical provided to the vocational expert. Specifically, Plaintiff contends that the ALJ ignored the consultative physician's observation that Plaintiff "'will have difficulty getting along with her coworkers, dealing with supervisors and maintaining a schedule at this time.'" (Complaint Memo at 8) (quoting AR 375). Plaintiff stresses that the consultative physician diagnosed her with "PTSD, severe, (and) and depressive disorder." (Complaint Memo at 6) (citing AR 375). However, the ALJ found that Plaintiff has PTSD, depression, and anxiety that have significantly limited her ability to perform basic work functions. The ALJ also incorporated this finding into the RFC. (See AR 24).

However, the ALJ properly rejected the examining physician's finding that Plaintiff would have difficulty maintaining a regular work schedule, for specific and legitimate reasons. As the ALJ correctly noted, Plaintiff was not taking any psychotropic drugs at the time of the consultive examination. (AR 24). Nor was Plaintiff receiving psychotherapy. (See AR 23; see also AR 440-41, 437). The ALJ also correctly noted that the treating physician's reports affirmatively showed Plaintiff inconsistently exhibited symptoms before and after the consultative examination. (See AR 23; see also AR 447, 450). The ALJ accurately observed that one month after the examining physician's examination, Plaintiff's treating physician reported that Plaintiff

16

1    "demonstrated no psychological symptoms, no emotional liability, and
2    had no sleep disturbances."    (See AR 23; see also AR 447).
3    Additionally, the ALJ singled out several of Plaintiff's activities
4    that indicate an ability to maintain a regular work schedule.
5    "Consistent with her daily activities, e.g., taking care of young
6    child, driving, shopping, paying bills, managing bank accounts,
7    regularly attending church services, and maintaining a stable 14 year
8    marriage, etc., the [ALJ found] that the claimant would have 'mild'
9    restriction in her daily activities . . . ." (AR 24).  The ALJ further
10   based his opinion the third party function report submitted by
11   Plaintiff's husband, in which Plaintiff was described as able to make
12   her own meals, clean her bathroom, make the bed, drive a car, shop for
13   groceries, pay bills and handle bank accounts, speak to her mother and
14   sister on the phone every other day, walk up to three miles at a time,
15   and attend church services.  (AR 25-26).  The ALJ's findings with
16   respect to Plaintiff's daily activities are supported by the record.
17   (See AR 194-99, 388).  Such activities indicate that Plaintiff can
18   maintain a regular schedule.[4]  Accordingly, this Court finds that the
19   ALJ provided specific and legitimate reasons for his weighing of the
20   medical record and his rejection of the consultative physician's
21   conclusion that Plaintiff would have difficulty maintaining a work
22   schedule.  See Aukland, 257 F.3d at 1035; see also Reddick, 157 F.3d
23   at 720-21.

24
25
26   _____

27        [4]  Although not a basis for this Court's determination, Plaintiff's
28   having maintained steady employment from 2002 to 2007 also suggests that
     she is able to maintain a regular schedule.  (See AR 154, 178).

17

1
2

**B.    The ALJ Properly Relied Upon The VE's Testimony**

3

4          Plaintiff also contends that the ALJ erred in presenting the

5     vocational expert with a hypothetical that failed to properly describe

6     Plaintiff's RFC.  Specifically, Plaintiff contends that the ALJ

7     incorporated an incorrect legal standard into the hypothetical

8     presented to the vocational expert.  The ALJ asked the vocational

9     expert to exclude from the list of jobs Plaintiff could perform any

10    "**job where an essential function of the job description would include

11    interacting with the public.**"  (See Complaint Memo at 11-12; see also

12    AR 87).  According to Plaintiff, the ALJ's hypothetical erroneously

13    used the concept of "essential job function" instead of the correct

14    standard of "bona fide occupational qualifications."  (Complaint Memo

15    at 10).  Plaintiff alleges that because the term "essential function"

16    does not include non-core job functions "reasonably necessary" for

17    employment in a particular position, the ALJ's hypothetical was

18    overinclusive of the jobs Plaintiff is able to perform.  (Id.).

19    Plaintiff further alleges that if the vocational expert had been asked

20    to identify jobs where interaction with the public is not a "reasonably

21    necessary" part of the job description, there would be no jobs that

22    someone with her RFC could perform.  (Id. at 10-12).  The Court

23    disagrees.

24          In order for the vocational expert's testimony to constitute

25    substantial evidence, the hypothetical question posed must "consider

26    all of the claimant's limitations."  Andrews, 53 F.3d at 1044.

27    However, the ALJ is not required to include limitations for which there

28    was no evidence.  See Osenbrock, 240 F.3d at 1164-65 (ALJ not bound to

18

accept as true the restrictions set forth in hypothetical if they were not supported by substantial evidence).   In this case, the ALJ asked the vocational expert to "assume a person of the claimant's age, education, and work experience . . . who has no exertional limitations . . [but]  is limited to simple tasks; to work that is low-stress . . . ."  (AR 86-87).  Additionally, the hypothetical was restricted to jobs that may involve being around employees throughout the work day but would entail "only occasional conversation and interpersonal interactions."  (AR 87).  The vocational expert testified that such a person could work as a hospital cleaner or warehouse worker.  (Id.).

The record supports the ALJ's first hypothetical.  The ALJ properly noted that Plaintiff is able to make her own meals, clean her bathroom, make the bed, drive a car, shop for groceries, pay bills and handle bank accounts, speak to her mother and sister on the phone every other day, walk up to three miles at a time, and attend church services.  (See AR 25-26; see also 194-99, 388).  The ALJ also properly observed that Plaintiff's medical records only show sporadic depression and anxiety.  As the ALJ noted, Plaintiff's medical records indicate that Plaintiff had no psychological symptoms at various points after her claimed onset date.   (See AR 24; see also AR 446-51). Nevertheless, Plaintiff contends that using the "essential function" language in the hypothetical prompted the vocational expert to testify that Plaintiff could perform jobs where interaction with the public is an essential job function, which Plaintiff contends is not supported by the evidence. (Complaint Memo at 9-11).  Plaintiff appears to allege that if the ALJ asked the vocational expert to exclude jobs where interaction with the public is reasonably necessary without

accommodation (Complaint Memo. at 11-12), there would be no jobs that someone with Plaintiff's RFC could perform.  However, the record does not show that Plaintiff is incapable of interaction with the public. Rather, as discussed above, the record shows that Plaintiff interacts with the public on a regular basis.  Accordingly, Plaintiff's claim fails.

Further, Plaintiff's claim would have been denied even if the vocational expert had been asked to identify jobs where interaction with the public is not a "reasonably necessary" part of the job description.  In a second hypothetical, the ALJ asked the vocational expert whether there are any jobs that someone with Plaintiff's limitations could perform in which interaction with the public is not a reasonably necessary element of the job.  Specifically, the ALJ asked whether there are "job[s] where a person essentially works alone and where the supervisor is not supervising them for any more than a third of the day" that a person with Plaintiff's limitations could perform. (AR 88).  The ALJ clarified that he was thinking of "a person who cleans at night or performs cleaning services . . . . [that is] not interacting with people." (AR 88).  The vocational expert answered that such person could perform night shift work as a hospital room cleaner.  (AR 89).  Accordingly, even if the ALJ had used a more restrictive hypothetical, Plaintiff would not be entitled to benefits. Thus, any arguable error in the first hypothetical was harmless error and remand would not result in a different outcome for Plaintiff.  As such, no remand is required.  Carmickle v. Comm'r, 533 F.3d 1155, 1162 (9th Cir. 2008) (if ALJ's error was inconsequential to the ultimate nondisability determination, no remand required).

**VIII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: December 7, 2012.


_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE